UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KERRY D. PARROTT                                  CIVIL ACTION

VERSUS                                            NO. 13-5207

ST. TAMMANY PARISH JAIL                           SECTION "R"(2)
MEDICAL DEPARTMENT ET AL.

## REPORT AND RECOMMENDATION

At the time of filing this complaint, plaintiff, Kerry D. Parrott, was a prisoner

incarcerated in the St. Tammany Parish Jail in Covington, Louisiana.[1]  He filed this

complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the St.

Tammany Parish Jail Medical Department and Dr. French, alleging that he had been

denied prescription eyeglasses after his were taken from him during his arrest, and that

he has been unable adequately to defend himself in court because he is unable to read and

prepare legal documents.  He seeks monetary damages and injunctive relief.  Record

Doc. No. 1 (Complaint at ¶¶ IV and V).

On October 10, 2013, I conducted a telephone conference in this matter.

Participating were plaintiff pro se; Gary Hanes, counsel for defendants. Plaintiff was

sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th

Cir. 1985), and its progeny.

---

[1]During the Spears hearing, plaintiff confirmed that he was then incarcerated in the East Baton Rouge
Parish Prison. Record Doc. No. 14.

## THE RECORD

Parrott explained that at the time he provided his testimony to the court, he was incarcerated in the East Baton Rouge Parish Jail as a pretrial detainee on a charge unrelated to the reason he had been incarcerated in the St. Tammany Parish Jail, where the claims he makes in this lawsuit arose. As to the St. Tammany Parish charges of aggravated rape, kidnapping and battery for which he had been held in the St. Tammany Parish Jail, Parrott testified that he had proceeded to trial shortly before the conference and that he had been found not guilty of those charges.

Plaintiff confirmed that his claims in this case relate exclusively to the nine-month time period during which he was held in the St. Tammany Parish Jail beginning on December 14, 2012 and continuing for through September 12, 2013.

As to his first claim that he was deprived of his eyeglasses, Parrott testified that when he was arrested and placed in the St. Tammany Parish Jail, arresting officers took his prescription eyeglasses from him, and "I never saw them again." He stated that he began to experience headaches and difficulty reading while in the jail, so he requested eyeglasses. He testified that his various requests to the medical department requesting eyeglasses were ignored, until he was seen at the jail by Dr. French about a month or two (January or February 2013) after he was arrested.  Parrott testified that he was seeing Dr. French about his request for eyeglasses "so I could read law paperwork to protect myself

in the court of law because all I could afford was a public (defender) attorney and I was facing a capital offense, life without parole mandatory." Parrott testified that two public defenders were appointed to represent him in his criminal proceedings in St. Tammany Parish and that they were successful in winning an acquittal for him at trial.

Parrott stated that he had received and reviewed the medical records that I ordered defendants to produce, Record Doc. Nos. 5 and 20, and that they are accurate, "other than I'm missing a bunch of them." He explained that he was seen by Dr. French about his need for eyeglasses, and not for any of the psychiatric problems and related treatment noted in the medical records. He stated that no one told him that he was not receiving eyeglasses because he was on suicide watch, because he had left the suicide watch after 11 days and had returned to the medical dorm.

Parrott testified that the glasses that were taken from him by arresting officers were prescription eyeglasses, but he did not know the precise prescription. He stated that during his testimony he was then wearing reading glasses. He testified that he was an indigent inmate and should have been provided with eyeglasses upon request, but was told by Dr. French that he must first have his mother pay off the amounts he already owed at the St. Tammany Parish Jail for other medical care he had received there. He alleged that Dr. French would have nothing further to do with him or with his request for eyeglasses once he learned what charges Parrott was facing.

Asked to describe his vision when he is not wearing glasses, he said "everything is fuzzy, like I'm looking through a window screen. and I can't read anything at all without glasses." He confirmed, however, that all the papers sent to this court in connection with this lawsuit were written by him by hand in large print, usually when he borrowed glasses from other inmates.

Parrott testified that he needed eyeglasses to defend himself adequately in court, even though he had two lawyers appointed to represent him. He said he had only one lawyer until about two weeks before trial, when the second attorney was appointed. He alleged that his first attorney did not provide adequate service. Parrott said he needed glasses to read law concerning his case because "I was just trying to do anything I could to get out of prison." He said he never filed anything on his own behalf in his criminal case because he had no glasses. He explained that his defense team at trial actually consisted of five persons: two public defenders, one law clerk and two legal assistants "who did a bang up job for me."

He complained that Dr. French exhibited a negative attitude toward him and his request for eyeglasses after he learned about the charges Parrott was facing. He also complained that, whenever he was moved from cell to cell in the St. Tammany Parish Jail, "half my paperwork" went missing.

On cross-examination, Parrott confirmed that it was arresting officers of the Slidell Police Department – <u>not</u> the named defendants – who were responsible for taking his own eyeglasses away from him upon his arrest. Thus, he confirmed that his claims in this case relate to defendants' inadequate provision of medical care for his vision problems and its effect on his ability to defend himself in his St. Tammany Parish criminal case.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow

proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[2]

## II.   MEDICAL CARE CONCERNING EYEGLASSES

Parrott was a pretrial detainee at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

punishment of pretrial detainees." <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

> In <u>Hare</u>, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), will apply.  <u>Shepherd v. Dallas County</u>, 591 F.3d 445, 452 (5th Cir. 2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51,

53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Id.</u> at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis</u>, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants

"exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference"

> standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Parrott must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim.

Under no circumstances can it be concluded that plaintiff's vision condition presented a serious medical need for constitutional purposes. Parrott has alleged facts, confirmed by his testimony and the verified medical records, that establish that his condition was nothing more than common near-sightedness. Plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical

12

need for constitutional purposes.  See <u>Hill v. Dekalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994), <u>overruled in part on other grounds by</u> <u>Hope v. Peltzer</u>, 536 U.S. 730, 739 (2002) (citing <u>Monmouth County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).

The minor difficulties described by Parrott in terms of his problems with reading and writing caused by near-sightedness, which in no way infringed his ability to communicate with this court in this case during the same time period, did not rise to the level of serious medical need for constitutional purposes.  See <u>Bellah v. McGinnis</u>, 42 F.3d 1388, 1994 WL 664926, at *1 (6th Cir. 1994) (unpubl. opin.) (moderate nearsightedness does not constitute a serious medical need); <u>Hammond v. Briley</u>, No. 02 C 6990, 2003 WL 1845414, at *3 (N.D. Ill. Apr. 7, 2003) ("it is questionable whether the plaintiff's need for stronger eyeglasses amounted to a 'serious' medical need."); <u>Swaissi v. Cotten</u>, No. 3-01-CV-1607-D, 2002 WL 492905, at *2 (N.D. Tex. March 28, 2002) (difficulty in reading and need for corrective eyeglasses not a serious medical need); <u>Davidson v. Scully</u>, 155 F. Supp. 2d 77, 88-89 (S.D.N.Y. 2001) (eye infection, eye irritation, tearing, headaches and blurry vision are not serious medical needs); <u>Hayes v.</u>

N.Y.S. D.O.C. Officers, No. 97 CIV. 7383 MBM, 1998 WL 901730, at * 8 (S.D.N.Y. Dec. 28, 1998) (complaints of eye pain, tearing and impaired vision one week following eye injury failed to state serious medical need); compare Koehl v. Dalsheim, 85 F.3d 86, 87 (2d Cir. 1996) (plaintiff who required eyeglasses to correct severe double vision and loss of depth perception; who walked into walls and objects, causing him to fall and suffer additional injuries; and who suffered serious, permanent eye damage as a result of deprivation of glasses had serious medical need). Even much more serious vision problems than those described by Parrott, such as eye cataracts not requiring surgery, have been held not to constitute serious medical need for purposes of constitutional analysis. Samonte v. Bauman, 264 Fed. Appx. 634, 2008 WL 176462, at *1 (9th Cir. 2008); Dunville v. Morton, 234 F.3d 1272, 2000 WL 1206653, at *1 (7th Cir. 2000); Hurt v. Mahon, No. 1:09CV958, 2009 WL 2877001, at *2 (E.D. Va. Aug. 31, 2009).

In addition, Parrott's allegations that Dr. French refused to prescribe replacement eyeglasses until Parrott paid what he owed for other medical care rendered and after he learned about the seriousness of the charges against him fail to rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983 in light of the minor nature of Parrott's near-sightedness condition.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

14

engaged in any similar conduct that would clearly evince a wanton disregard for any <u>serious</u> <u>medical</u> <u>needs</u>. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. Other courts have held that decisions of the sort made by Dr. French in Parrott's case concerning eyeglasses cannot serve as the basis for a finding of deliberate indifference in the constitutional sense. <u>See</u> <u>Roddy v. McBride</u>, 59 F.3d 173, 1995 WL 377062, at *2 (7th Cir. 1995) (unpubl. opin.) (deliberate indifference could not be inferred from negligent administration of an eye exam or diagnosis of inmate's eye condition where deterioration of plaintiff's eyesight from 20/20 to 18/58 was not a serious medical need); <u>Monterroso v. Lawson</u>, 1996 WL 590604, at *2, 6 (N.D. Cal. 1996) (no deliberate indifference when plaintiff did not receive replacement eyeglasses for more than four months).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his <u>serious</u> medical needs rising to the level of a violation of his constitutional rights. For all of the foregoing reasons, plaintiff's complaints in this case about his medical care regarding eyeglasses for his near-sightedness advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   ACCESS TO COURTS

Parrott testified that he was unable to assist his team of lawyers and legal assistants in defending himself against his state court criminal charges because he was unable to read and prepare legal documents without his prescription eyeglasses.  Prisoners have a First Amendment right of meaningful access to the courts.  Bounds v. Smith, 430 U.S. 817, 828 (1977); Dickinson v. TX, Fort Bend County, 325 F. App'x 389, 390 (5th Cir. 2009); Sandoval v. Johns, 264 F.3d 1142, 2001 WL 822779, at *1 (5th Cir. 2001); McDonald v. Steward, 132 F.3d 225, 230 (5th Cir. 1998); Degrate v. Godwin, 84 F.3d 768, 768-69 (5th Cir. 1996).  However, this constitutional right is not without limitations. "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); accord Norton v. Dimazana, 122 F.3d 286, 290 (5th Cir. 1997); Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996).  Significantly, a prisoner's First Amendment right in this regard is limited to the presentation of a non-frivolous claim or argument to the court.  Lewis v. Casey, 518 U.S. 343, 352-53 (1996).

In addition, to state a claim that his constitutional right of access to the courts was violated, Parrott must demonstrate that his position as a litigant was actually prejudiced.

<u>Id.</u> at 356; <u>Cochran v. Baldwin</u>, 196 F. App'x 256, 257-58 (5th Cir. 2006); <u>Smith v. Polunsky</u>, 233 F.3d 575, 2000 WL 1468717, at *1 (5th Cir. 2000); <u>Eason</u>, 73 F.3d at 1328.

Parrott wholly fails to establish the essential elements of a First Amendment claim detailed above, either in his complaint or his testimony.  His testimony and his many written submissions to this court in this case establish that he in fact had the ability to prepare and transmit legal documents to the courts.  Certainly, no actual prejudice to his position as a litigant has occurred in light of the substantial team of legal advisers with whom he was provided for his criminal defense and the resulting acquittal he received at trial.

Parrott acknowledged that he was provided with appointed counsel and a team of legal assistants to represent him in his criminal case.  Under these circumstances, plaintiff's right of access to the courts, as guaranteed by the Constitution and interpreted by <u>Bounds</u>, was clearly satisfied by his representation by counsel in his criminal proceedings.  <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1291 (11th Cir. 1998); <u>Schrier v. Halford</u>, 60 F.3d 1309, 1313-14 (8th Cir. 1995); <u>Mackin v. Carpenter</u>, 988 F.2d 1212, 1993 WL 82306, at *3 (5th Cir. 1993); <u>Mann v. Smith</u>, 796 F.2d 79, 83 (5th Cir. 1986); <u>Morrow v. Harwell</u>, 768 F.2d 619, 623 (5th Cir. 1985).

It is clear that no actual legal prejudice to Parrott's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000). In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts.

Parrott acknowledged in his testimony that he was found not guilty of the criminal charges against him in the state court, all with the assistance of his appointed legal team and despite his alleged inability to contribute his own legal research and pro se written submissions to that effort. Certainly, he has demonstrated his ability to make written submissions to this court in connection with this case. Parrott has neither alleged nor shown any actual injury to his position as a litigant in these matters.

For all of the foregoing reasons, Parrott's claims concerning the First Amendment are legally frivolous and fail to state a claim upon which relief can be granted under Section 1983. They must be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this ____24th____ day of January, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

19